IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| John F. Floyd and Gordon Farms Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 7:20-cv-1305-TMC |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Spartanburg South Carolina, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| City of Spartanburg South Carolina | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| John F. Floyd and Gordon Farms Inc., | ) | |
| | ) | |
| Counter Defendants. | ) | |
| _____ | ) | |

Plaintiffs John F. Floyd ("Floyd") and Gordon Farms Inc. ("Gordon Farms") (collectively, "Plaintiffs") brought this action against Defendant City of Spartanburg, South Carolina (the "City") asserting two claims for breach of contract, as well as breach of the implied covenant of good faith and fair dealing, breach of contract accompanied by a fraudulent act, unjust enrichment, and promissory estoppel. (ECF No. 1). The City filed its answer on June 5, 2020, stating two counterclaims against Plaintiffs for unjust enrichment and breach of contract. (ECF No. 6).

On May 14, 2021, the parties filed cross motions for summary judgment. (ECF Nos. 36; 37). The parties filed their respective responses and replies to the motions for summary judgment. (ECF Nos. 41; 42; 45; 47). On September 30, 2021, the undersigned judge issued a text order referring the parties' motions for summary judgment to United States Magistrate Judge Jacquelyn D. Austin for a Report and Recommendation ("Report"). Now before the court is Judge Austin's

Report, recommending that the court grant in part and deny in part both motions for summary judgment. (ECF No. 59). Plaintiffs and the City both filed objections to the Report (ECF Nos. 65; 66), and this matter is now ripe for review. After carefully reviewing the record and the submissions of the parties, the court concludes a hearing is unnecessary to decide this matter. For the reasons set forth below, the court adopts the Report, as modified, and grants in part and denies in part both motions for summary judgment.

## BACKGROUND & PROCEDURAL HISTORY

Upon review of the parties' briefing, the record, and the magistrate judge's Report, the court adopts the procedural history, factual background, and evidence as thoroughly set forth in the Report and to which none of the parties object. *See* (ECF No. 59 at 2–9). Briefly, this case arises out of two distinct contracts.[1] The first is an Intergovernmental Agreement entered between the City and Spartanburg County on December 14, 1998, "for the development of an incentive program to stimulate commercial redevelopment of vacant, physically declining, or underperforming commercial properties within the City of Spartanburg." (ECF Nos. 1 at 2–3; 1-1; 36 at 3). The Intergovernmental Agreement provided for the creation of a multi-county industrial/business park ("MCIP" or the "Program") such that property owners could apply to the City to have their properties included in the MCIP. (ECF Nos. 1 at 3; 36 at 3–4). The Intergovernmental Agreement further incentivized participation in the Program by offering annual fee-in-lieu-of-ad-valorem tax rebates. (ECF Nos. 1 at 3; 1-1 at ¶¶ 4(D), 5(G), (H); 36 at 4). Specifically, property owners participating in the Program would receive an annual fee rebate from the City equal to thirty percent (30%) of the incremental annual property taxes resulting from the redevelopment of the property for fifteen (15) years or until the payments reached twenty percent

---

[1] The court notes, as an initial matter, that it is disputed whether the second agreement at issue in this case—the Extension Agreement—is actually a valid and enforceable contract.

(20%) of the redevelopment basis (the "Cap"), whichever came sooner. (ECF Nos. 1 at 3; 1-1 at ¶¶ 4(D), 5(G), (H); 36 at 4).

At the time the City and Spartanburg County executed the Intergovernmental Agreement, Floyd and Gordon Farms[2] owned the Hillcrest Shopping Center ("Hillcrest") and sought to have the property included in the MCIP. (ECF No. 36-1). On August 9, 1999, the City approved Hillcrest for inclusion in the Program, (ECF No. 1-2), and on June 19, 2000, the County followed suit and passed a resolution adding Hillcrest to the list of properties included in the MCIP, (ECF No. 1-3). (ECF Nos. 1 at 5; 36 at 6). Based on the redevelopment and renovation costs Floyd submitted, the City determined the redevelopment basis for the project to be $15,230,507.00. (ECF Nos. 1 at 5; 1-4; 36 at 6; 42-2 at 5). Thus, pursuant to the Intergovernmental Agreement, Floyd[3] was entitled to receive annual rebate payments from tax years 2000 through 2014 or until the rebates equaled the Cap amount of $3,046,101.00. (ECF Nos. 1 at 5; 1-4; 36 at 6; 42-2 at 5). Accordingly, Floyd received the first annual fee rebate on March 16, 2001, for tax year 2000 in the amount of $72,945.00. (ECF Nos. 1 at 6; 1-8; 36 at 6).

The second agreement at issue in this case allegedly came about after Plaintiffs began exploring the option of selling Hillcrest to Excel Realty Partners LP ("Excel") in late-2004 and early-2005. (ECF Nos. 1 at 8; 36 at 9). Although Floyd originally hoped to sell the property for thirty-six million dollars ($36,000,000.00), he never had the property appraised, nor did he seek any third-party input in arriving at that number. (ECF Nos. 36 at 9; 36-13 at 11–24). Instead, Excel made an initial offer of thirty-two million ($32,000,000.00). (ECF Nos. 36 at 9; 36-6).

---

[2] At all relevant times, Floyd owned 100% of Gordon Farms. (ECF No. 56-1 at 3–4).

[3] Prior to Hillcrest's inclusion in the Program, Gordon Farms and Floyd individually owned separate portions of the shopping center. However, a week after Spartanburg County approved Hillcrest for inclusion in the MCIP, Floyd transferred his ownership in Hillcrest to Gordon Farms and, that same day, Gordon Farms transferred the entire shopping center to Hillcrest Shopping Complex, LLC, which is a subsidiary of Gordon Farms. (ECF Nos. 1 at 6; 1-6; 1-7; 36 at 6; 42-4 at 14–15).

Additionally, in connection with the potential sale, Floyd met with representatives of the City who informed Floyd a change in ownership of the property may require the new owner to bring a section of Hillcrest comprising 120,000 square feet of retail space into compliance with applicable building codes before the space could be leased.  (ECF Nos. 1 at 8–9; 36 at 9; 36-15 at 3–8). Plaintiffs allege that, upon learning of the necessary renovations, Floyd and the City agreed to have Gordon Farms sell Hillcrest to Excel at a "reduced price" to allow Excel to perform the necessary redevelopment work, in exchange for the City's "agree[ment] to extend the fee rebate period for the entire Shopping Center[,]" (the "Extension Agreement").  (ECF No. 1 at 9).  Specifically, Plaintiffs allege that the City orally agreed to the following:

> [W]hile the existing MCIP designation for the entire Shopping Center would continue, the 15-year annual fee rebate period for the entire Shopping Center would start over following completion of the redevelopment work to account for the significantly reduced sales price of the Shopping Center necessary to provide for the required redevelopment.   Additionally, the fee rebate payments would transfer from Mr. Floyd to Gordon Farms, the entity that would sell the Shopping Center at a reduced price in return for the extension of the annual fee rebate period. . . . Pursuant to the agreement, the annual fee rebate period would begin to run for a 15-year period beginning with the tax year following the completion of the renovations to the Shopping Center.

*Id*. at 9, 10.

The City, on the other hand, denies making any such agreement with Plaintiffs and asserts that, "[u]ltimately, there were numerous significant deductions to the original purchase offer, including deductions for the costs Excel would incur in improving [Hillcrest], which Excel knew would require substantial repairs and redevelopment to attract tenants and, as a consequence of those activities, bringing it up to code."  (ECF No. 36 at 9–10); *see also* (ECF No. 36-7). Regardless, Gordon Farms sold Hillcrest to Excel on February 16, 2005, for $31,309,522.00, but retained the right to receive any future fee rebate payments.  (ECF Nos. 1 at 10–11; 36 at 10; 36-

4

7).  Additionally, on December 21, 2005, the City send a letter confirming that the remaining fee rebate payments on Hillcrest would be made to Gordon Farms.  (ECF No. 1-10).

Excel completed the redevelopment work on Hillcrest in 2007.  (ECF No. 1 at 11).  Accordingly, Plaintiffs allege that, under the Extension Agreement, "a new 15-year fee rebate period for the entire Shopping Center commenced in tax year 2007, to run through tax year 2021." (ECF No. 1 at 11).  The annual fee rebate period for Hillcrest under the original MCIP designation should have ended in tax year 2014, with the last payment being made in 2015.  (ECF No. 26 at 10).  Nevertheless, Gordon Farms continued to receive annual fee rebate payments from the City through tax year 2016, receiving the final payment on April 7, 2017.  (ECF Nos. 1 at 15; 1-11).  Plaintiffs assert that the payments for tax years 2015 and 2016 were part of the extended fee rebate period from 2007 through 2021 pursuant to the Extension Agreement.  The City, however, asserts that those payments were made in error and sent multiple letters to Plaintiffs in November and December 2017 stating the specific amount of the overpayment and requesting that Plaintiffs return the funds.  (ECF Nos. 1 at 15–16; 1-13; 1-14; 1-15; 36 at 11).  The City asserts that "[i]t was only after receiving the overpayment letters that Floyd, for the first time, claimed that the City had agreed to a new 15-year fee rebate period for the entirety of Hillcrest[.]"  (ECF No. 36 at 12).

Consequently, Plaintiffs initiated this action on April 6, 2020, asserting claims against the City for breach of the Intergovernmental Agreement, breach of the Extension Agreement, breach of the implied covenant of good faith and fair dealing, breach of contract accompanied by a fraudulent act, unjust enrichment, and promissory estoppel.  (ECF No. 1).  The City likewise asserts two counterclaims against Plaintiffs for unjust enrichment and breach of the Intergovernmental Agreement.  (ECF No. 6).  The parties subsequently filed cross-motions for summary judgment.  (ECF Nos. 36; 37).  In its motion for summary judgment, the City argues (1)

that Plaintiffs' contract claims based on the Extension Agreement are barred by the South Carolina Statute of Frauds, S.C. Code Ann. § 32-3-10(5), because the parties' obligations under the Extension Agreement could not be performed within one year, (ECF No. 36 at 16–25); and (2) that Plaintiffs' equitable claims for unjust enrichment and promissory estoppel fail as a matter of law, *id*. at 25–27. Plaintiffs, on the other hand, argue (1) that the City failed to identify any concrete injury and, therefore, lacks standing to bring its claims, (ECF No. 37 at 7–9); (2) that the City's unjust enrichment claim fails as a matter of law because the City is not entitled to recover the overpayment amounts, *id*. at 9–13; and (3) that the City's breach of contract claim fails as a matter of law, *id*. at 13–14. The magistrate judge also ordered additional briefing from the parties regarding Plaintiffs' alleged injuries in support of their unjust enrichment and promissory estoppel claims, (ECF No. 51), which the parties filed in January 2022, (ECF Nos. 55; 56).

## STANDARD OF REVIEW

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *See Matthews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances,*

*Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)).  In the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation.  *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party."  *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the burden of proving that summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts

showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

### I.    Magistrate Judge's Report

#### A.  *Plaintiffs' Contract Claims – Statute of Frauds*

The magistrate judge first addressed the City's argument that Plaintiffs' contract claims fail because the Statute of Frauds prevents the Extension Agreement from being legally enforceable. (ECF No. 59 at 10–15). The magistrate judge began by recognizing that, under the South Carolina Statue of Frauds, "no action shall be brought 'to charge any person upon any agreement that is *not to be performed within the space of one year* from the making thereof . . . unless the agreement upon which such action shall be brought or some memorandum or note therefore shall be in writing and signed by the party to be charged therewith . . . .'" *Id*. at 11–12 (quoting S.C. Code Ann. § 32-3-10(5)) (emphasis in original). As the magistrate judge correctly noted, "[t]he meaning of the emphasized language is central to this case[,]" and "South Carolina courts have emphasized that 'the Statute of Frauds applies only to contracts which are *impossible* of performance within one year.'" *Id*. at 12 (quoting *Roberts v. Gaskins*, 327 S.C. 478, 484, 486 S.E.2d 771, 774 (Ct. App. 1997)). Thus, "[t]he critical question when determining whether the Statute of Frauds applies 'is not what the probable, or expected, or actual performance of the contract was, but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year.'" *Id*. (quoting *Warner v. Tx. & Pac. Ry. Co*., 164 U.S. 418, 434 (1896)). "Accordingly, 'the fact that performance within a year is highly improbable or not expected by the parties does not bring a contract within the scope of this clause.'" *Id*. at 12–13 (quoting *Roberts*, 327 S.C. at 484, 486 S.E.2d at 774). The magistrate judge

also properly recognized that application of the Statute of Frauds is an affirmative defense and, as such, the City bears the burden of proof. *Id*. at 13.

As to this case, the magistrate judge noted "the City does not dispute that it was possible that Plaintiffs would fulfill their obligations under the [Extension] Agreement within one year of the formation of the contract[,]" but rather "the City argues that it has forecasted evidence showing that, at the time the parties entered into the [Extension] Agreement, it was impossible for the City to pay rebates reaching the Cap amount within one year." *Id*. at 13–14.  However, the magistrate judge found that "[t]he dispositive fact here is that, under the [Extension] Agreement as alleged, once the renovations were completed, the costs submitted, the rebates calculated, and the rebates paid reached the Cap amount, the parties' obligations would be completed." *Id*. at 14.  Thus, applying the law as set forth above, the magistrate judge concluded that, "[b]ecause no term in the agreement itself precluded these contingencies from occurring with one year, the Statue of Frauds does not apply." *Id*. (citing *Elkins v. Plywoods-Plastics Corp*., 219 S.C. 296, 300, 65 S.E.2d 243, 254 (1951) (noting that "unless an alleged parol contract shows *on its face* that it is not capable of being performed within one year, it does not contravene the Statute of Frauds" (emphasis added)); *McGehee v. S.C. Power Co*., 187 S.C. 79, 196 S.E. 538, 540 (1938)).

The magistrate judge further noted that, although the City relies on facts beyond the Agreement itself to demonstrate that it was mathematically impossible for the City to fulfill its alleged obligations within one year, the Statute of Frauds only applies if "the terms of the agreement itself . . . preclude performance within a year." *Id*. at 14.  The magistrate judge then addressed the City's reliance on the South Carolina Supreme Court's holding in *Springob v. University of South Carolina*, 407 S.C. 490, 757 S.E.2d 384 (2014) to argue that the Extension Agreement could not have been performed within a year.

> [T]he City's argument simply begs the question of whether it would
> be impossible for the rebates to reach the Cap amount so quickly.
> What the City fails to appreciate is *Springob* is an example of
> exactly the type of case to which the Statute of Frauds applies in that
> the *terms of the contract itself* foreclosed the possibility that it could
> be fully performed in one year because the University was required
> to fulfill its obligation for five years.   Because there are no
> allegations that the [Extension] Agreement included analogous
> obligations setting out a specific minimum time that the City would
> have to continue to perform, the Statute of Frauds does not apply.

(ECF No. 59 at 15 (emphasis in original)).   The magistrate judge concluded, therefore, that the

City's motion for summary judgment should be denied as to its Statute of Frauds argument and

Plaintiffs' contract-based claims.  *Id*.

### B.  *Plaintiffs' Promissory Estoppel Claim*

The magistrate judge then turned to the City's arguments regarding Plaintiffs' claims for

promissory estoppel and unjust enrichment.  *Id*. at 16–20.  First, the magistrate judge set forth the

necessary elements for a promissory estoppel claim: "(1) an unambiguous promise by the

promisor; (2) reasonable reliance on the promise by the promise; (3) reliance by the promise was

expected by and foreseeable to the promisor; and (4) injury caused to the promise by his reasonable

reliance."  *Id*. at 16 (quoting *N. Am. Rescue Prods., Inc. v. Richardson*, 411 S.C. 371, 379–80, 769

S.E.2d 237, 241 (2015)).   In their supplemental brief, Plaintiffs identify four injuries caused by

their reliance on the Extension Agreement: (1) Plaintiffs' sale of Hillcrest for less than the $36

million price originally negotiated,[4] (2) loss of possession and ownership of and revenues from

Hillcrest,[5] (3) loss of Floyd's personal right to receive the annual fee rebate payments, and (4) loss

of the benefit of the Extension Agreement, specifically the alleged remaining fee rebate payments.

---

[4] The court notes that Plaintiffs discussed this only as an injury with respect to their unjust enrichment claim, not promissory estoppel.  *See* (ECF No. 55).

[5] Plaintiffs discuss these as two separate injuries in their supplemental brief.  *See* (ECF No. 55).

(ECF No. 55 at 5–9).  The magistrate judge considered each of Plaintiffs' alleged injuries in turn. (ECF No. 59 at 16–18).

As to Plaintiffs' first alleged injury that, in reliance on the Extension Agreement they sold Hillcrest for less than $36 million, the magistrate judge found there was no evidence to support such an injury.  *Id*. at 16–17.  The magistrate judge noted that, "although Excel may have tentatively agreed to the $36 million price pending its undertaking of due diligence, once Excel realized what renovations would be required to maximize Hillcrest's profitability, it decided that $36 million was too much to pay." *Id*. at 17.  Consequently, the magistrate judge concluded "there is no set of facts under which Plaintiffs could have actually completed a sale of Hillcrest for $36 million and thus no evidence that they suffered any injury by selling at the lower price."  *Id*.

Similarly, with respect to Plaintiffs' second set of alleged injuries—the lost possession and ownership of and revenues from Hillcrest—the magistrate judge reasoned that Plaintiffs gave up these rights in Hillcrest for a price, specifically over $30 million.  *Id*.  The magistrate judge concluded that, "[u]nless what they sold was worth more than the price—and they have forecasted no evidence that it was—Plaintiffs were not injured by the sale."  *Id*.

The magistrate judge also found Plaintiffs' assertion that Floyd suffered a loss by transferring the right to receive the fee rebate payments to Gordon Farms unavailing given that Floyd is the sole member of Gordon Farms.  *Id*. at 17–18.  Finally, as to Plaintiffs' claim that they did not receive the benefit of their bargain with the City, the magistrate judge found that, "[a]lthough not receiving these payments may have been disappointing to Plaintiffs, it is not an injury they suffered *as a result of any reliance on a promise by the City*."  *Id*. at 18 (emphasis in original).  In other words, Plaintiffs "have not forecasted any evidence that had the City never made the promises at issue, Plaintiffs would be any better off."  *Id*.  Therefore, the magistrate judge

concluded there is no evidence in the record that Plaintiffs relied to their detriment on the City's alleged promises under the Extension Agreement and recommends the court grant summary judgment to the City on this claim. *Id.*

### C. *Plaintiffs' Unjust Enrichment Claim*

As the magistrate judge correctly noted, to prevail on a claim of unjust enrichment, "a plaintiff must show: (1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Id.* at 18–19 (quoting *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 409, 581 S.E.2d 161, 167 (2003)) (internal quotation marks omitted). Furthermore, "[t]hat the defendant's enrichment must come at the expense of the plaintiff . . . means that the plaintiff must show 'actual damages resulting from the defendant's wrongful retention of benefits.'" *Id.* at 18 (quoting *Gignilliat v. Gignilliat, Savitz & Bettis, LLP*, 385 S.C. 452, 467, 684 S.E.2d 756, 764 (2009)).

In their Complaint, Plaintiffs contend that they only redeveloped Hillcrest to fulfill their obligations under the Extension Agreement and that the City has unjustly retained the benefit from Plaintiffs' actions by refusing to make the additional fee rebate payments allegedly owed to Plaintiffs. (ECF No. 1 at 23–24). In its supplemental brief, the City argues that Plaintiffs cannot show any loss or injury as a result of their actions from which the City benefited. (ECF No. 56 at 2–4). In response, Plaintiffs argued first that, regardless of any injury to themselves, it would be inequitable for the City to retain the benefits of Plaintiffs' actions made in reliance on the Extension Agreement. (ECF No. 55 at 2–5). However, based on the law set forth above requiring actual damages to prevail on an unjust enrichment claim, the magistrate judge summarily rejected Plaintiffs' first argument. (ECF No. 59 at 19–20). Plaintiffs then argue that, if some injury is

necessary, they provided evidence of such in that Plaintiffs sold Hillcrest for less than $36 million. (ECF No. 55 at 5–7). The magistrate judge also rejected this argument for the same reasons she articulated with respect to Plaintiffs' promissory estoppel claim. (ECF No. 59 at 20). Consequently, the magistrate judge concluded that Plaintiffs failed to put forth evidence of any injury in support of their unjust enrichment claim and recommends the court grant summary judgment to the City on this claim as well. *Id*.

### D. City's Counterclaims

With respect to the City's counterclaims against Plaintiffs—unjust enrichment and breach of contract—the magistrate judge first addressed Plaintiffs' argument as to standing and found that the alleged overpayments made to Plaintiffs to which they were not entitled and which they have failed to return constitutes an Article III injury sufficient to confer standing for the City to bring its claims. *Id*. at 20–21.

Turning to the merits of the City's unjust enrichment claim, the magistrate judge noted that "Plaintiffs do not dispute that at least a genuine factual issue remains regarding whether the City paid Gordon Farms more rebates than Gordon Farms is entitled to[,]" but instead "argue that the City has waived the right to assert a legal claim to recover the entire alleged overpayment because the City had informed Gordon Farms it would recover the amounts over time through offsets of [other rebate payments owed] until the balance was satisfied." *Id*. at 22 (citing ECF No. 37 at 9–12). The magistrate judge rejected this argument, noting there is no evidence in the record that the City "state[d] any intention to relinquish its right to turn to the courts if the circumstances warranted it." *Id*. at 22–23. Thus, the magistrate judge recommends denying summary judgment as to the City's unjust enrichment claim.

As to the City's breach of contract claim, Plaintiffs originally argued that the City had failed to identify any contract which Plaintiffs breached by failing to return the alleged overpayments. (ECF No. 37 at 14). In its response, the City clarified that its claim was based on the Intergovernmental Agreement to which, the City asserts, Plaintiffs are third-party beneficiaries. (ECF No. 41 at 11). Plaintiffs replied arguing that the City could not enforce the Intergovernmental Agreement against them because they are not parties to the contract, only third-party beneficiaries thereof. (ECF No. 45 at 7–8). The magistrate judge agreed with Plaintiffs and found that, since Plaintiffs are not parties to the Intergovernmental Agreement, the City cannot enforce the contract against them. (ECF No. 59 at 23–24). Therefore, the magistrate judge recommends that summary judgment be granted to Plaintiffs on the City's breach of contract claim.

## II. Objections to the Report

As an initial matter, the court notes that none of the parties objected to the magistrate judge's findings and conclusions regarding the City's claims—in particular, that the City has standing to pursue both claims and the disposition of Plaintiffs' motion for summary judgment. *See* (ECF Nos. 65; 66). Accordingly, the court need only review this portion of the Report for clear error and the court need not provide any explanation for adopting the magistrate judge's recommendations. *Camby*, 718 F.2d at 199–200; *Dunlap*, 288 F. Supp. 3d at 662. Having carefully and thoroughly reviewed the Report, the record, and the parties' extensive briefing, the court wholly agrees with and adopts the magistrate judge's conclusions and recommendations on these issues. Thus, Plaintiff's motion for summary judgment (ECF No. 37) is DENIED in part as to Plaintiff's argument regarding standing and the City's unjust enrichment claim but GRANTED as to the City's claim for breach of contract.

A. *City's Objections*

The City's first objection, at its core, asserts the City's disagreement with the magistrate judge's conclusion that the Statute of Frauds does not apply to the Extension Agreement. *See* (ECF No. 65 at 1–5). In support of this assertion, the City makes three distinct arguments. *See id*. The City's first argument is that there was insufficient evidence from which the magistrate judge could find the existence and terms of the Extension Agreement because the only evidence was the self-serving testimony of Plaintiffs. *Id*. at 1–2. Specifically, the City relies on the following quote from a 1978 Florida Court of Appeals opinion, which was parenthetically cited in an unpublished South Carolina Court of Appeals' opinion: "The very purpose of the statute of frauds is defeated where the sole proof of the existence and contents of a document relied upon to avoid the statute is the testimony of the plaintiff." *Id*. at 2 (quoting *Yadkin Valley Bank & Tr. v. Oaktree Homes, Inc.*, No. 2014-UP-306, 2014 WL 3747342 at *1 (S.C. Ct. App. July 30, 2014)); *see also Weinsier v. Soffer*, 358 So. 2d 61, 63 (Fla. Dist. Ct. App. 1978) (quoted in parenthetical in *Yadkin*).

As an initial matter, the court notes this is the first time the City has ever made any argument regarding the sufficiency of the evidence in the record to support the existence of the Extension Agreement. This argument was clearly available to the City prior to the filing of its motion for summary judgment and, yet, the City choose to make its motion based solely on the ground that the Extension Agreement—assuming it exists—could not be completed within one year and, therefore, runs afoul of the Statute of Frauds. *See* (ECF No. 36). Federal district "[c]ourts have frowned upon objections to R&Rs that make new arguments that serve as a new basis for a motion [for summary judgment]" and, thus, "the court is not obligated to consider new arguments raised by a party for the first time in objection to the magistrate's report." *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C.

March 31, 2017); *see also Clark v. Thompson*, Civ. A. No. 0:12-cv-02669-RBH, 2014 WL 1234347, at *2 (D.S.C. March 25, 2014) (noting a party's new argument raised for the first time in his objections "must be overruled as untimely and thus improper").

Nevertheless, even if the court were to consider the City's argument, the court would find that the rulings in *Yadkin* and *Weinsier* is inapposite to the facts of this case. As Plaintiffs point out in their response to the City's objections, *Yadkin* addressed the Lender Statute of Frauds, S.C. Code Ann. § 37-10-107(1), and, in particular, whether the plaintiff had established a lost written loan agreement by clear and convincing evidence as is required to satisfy the "lost memorandum" exception to the Statute of Frauds. (ECF No. 69 at 2–3); *see also Yadkin*, 2014 WL 3747342 at *1. Similarly, the issue in *Weinsier* revolved around the appropriate burden of proof for lost memoranda, and the Florida Court of Appeals held that a plaintiff's testimony alone is insufficient to constitute clear and convincing evidence. (ECF No. 69 at 3); *Weinsier*, 358 So. 2d at 63. In this case, however, neither the Lender Statute of Frauds nor the lost memorandum exception is at issue, and Plaintiffs need only prove their claims by a preponderance of the evidence. Further, the court is not aware of any South Carolina precedent which restricts the evidence a court may consider on a motion for summary judgment when determining whether an oral agreement is subject to the general Statute of Frauds, S.C. Code Ann. § 32-3-10(5). Finally, the court notes that the magistrate judge did not actually make any findings of fact as to the existence or terms of the Extension Agreement. *See* (ECF No. 59). Rather, in order to address the City's argument that the Agreement is barred by the Statute of Frauds, the magistrate judge assumed—as did the City when making the argument—that the Agreement exists and that its terms were those set forth by the parties in their recitations of the facts. *See id*.; *see also* (ECF No. 36). Thus, the court finds no error and rejects the City's first argument.

The City's second argument asserts that the magistrate judge erred by "ignoring uncontested evidence offered by the City showing that performance of the [Extension] Agreement within a year of its making was physically and mathematically impossible."  (ECF No. 65 at 3).  The City's third argument is related and contends that the magistrate judge incorrectly distinguished the South Carolina Supreme Court's holding in *Springob*.  *Id*. at 4.  The court disagrees.

As the magistrate judge accurately noted in her Report, "[t]he critical question when determining whether the Statute of Frauds applies 'is not what the probable, or expected, or actual performance of the contract was, but whether the contract, *according to the reasonable interpretation of its terms*, required that it should not be performed within the year.'"  (ECF No. 59 at 12 (quoting *Warner*, 164 U.S. at 434) (emphasis added)).  The South Carolina Supreme Court has long espoused the understanding that whether a contract is capable of full performance within a year is dictated *solely* by the terms of the agreement itself and not outside circumstances, whether they be expectations, projections, or reality.  *See, e.g.*, *Joseph v. Sears Roebuck & Co*., 224 S.C. 105, 112, 77 S.E.2d 583, 586 (1953) (recognizing the long-standing principle that the "clause of the statute extends only to such promises where, *by the express appointment of the part[ies]*, the thing is not to be performed within a year" and "a note in writing is not necessary, unless it appears *from the agreement* that it was to be performed after the year" (emphasis added)).  Thus, the magistrate judge properly limited her consideration to the alleged terms of the Extension Agreement, as set forth by the parties in their briefing and correctly concluded that, "under the [Extension] Agreement as alleged, once the renovations were completed, the costs submitted, the rebates calculated, and the rebates paid reached the Cap amount, the parties' obligations would be completed . . . [and] no term in the agreement itself precluded these contingencies from occurring

within one year[.]"  (ECF No. 59 at 14).  Thus, the City's evidence regarding whether, *in reality*, it was possible for the fee rebates to reach the Cap amount in one year is entirely irrelevant to the question at hand, and the magistrate judge did not err by disregarding this evidence.

For the same reasons, the court finds the magistrate judge properly distinguished the Supreme Court's ruling in *Springob* because, in that case, "the *terms of the contract itself* foreclosed the possibility that it could be fully performed in one year because the University was required to fulfill its obligation for five years."  *Id*. at 15 (emphasis in original); *see also Springob*, 407 S.C. at 496, 757 S.E.2d at 387.  On the other hand, in this case, the Extension Agreement allegedly required the City to pay the fee rebate amounts for fifteen years *or* until the fee rebate payments reached the Cap amount, whichever came sooner.  *See* (ECF No. 36 at 4, 12–13).  Therefore, the magistrate judge correctly distinguished the holding in *Springob,* and the court finds no error.  Accordingly, the City's first objection as to the magistrate judge's conclusion that the Statute of Frauds does not bar Plaintiffs' contract-based claims is overruled.

The City's second objection asserts that, based on the magistrate judge's conclusion that Plaintiffs failed to provide evidence of any damage or injury to support their claims for unjust enrichment and promissory estoppel, the court should find that Plaintiffs have failed to prove an injury as to any of their claims.  (ECF No. 65 at 5–6).  The court notes that this is not an objection to the magistrate judge's Report because it identifies no factual or legal error in the Report.  *See Dunlap*, 288 F. Supp. 3d at 662 n.6.  Instead, the City agrees with the Report's conclusion and seeks to raise a new argument in support of extending the magistrate judge's findings to Plaintiffs' remaining claims.  As noted above, however, "the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's [R]eport."  *Elliott*, 2017 WL 1206408 at *3 (quoting *Dune v. G4s Regulated Sec. Sols., Inc*., C/A No. 0:13-cv-01676-JFA, 2015

WL 799523, at *2 (D.S.C. Feb. 25, 2015)).  Furthermore, while the court may address such arguments, "that power lies within the court's sound discretion."  *Id*.  The court sees no reason to exercise such discretion with respect to this argument.  The court, therefore, declines to address the City's newly presented argument and overrules this objection.

### B.  *Plaintiffs' Objections*

Plaintiffs raise two objections to the Report.  (ECF No. 66).  Plaintiffs' first objection asserts the magistrate judge erred in concluding they had failed to present any evidence of an injury to support their claim for promissory estoppel.  *Id*. at 2–5.  However, as the City points out in its response (ECF No. 67 at 1), Plaintiffs' arguments in support of its objection are almost identical to the arguments they submitted in their briefing.  *Compare* (ECF No. 66), *with* (ECF Nos. 42; 55).  It is well-settled in this Circuit that "an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object." *Jesse S. v. Saul*, No. 7:17-cv-00211, 2019 WL 3824253, at *1 (W.D. Va. Aug. 14, 2019); *see also, e.g.*, *Howard*, 408 F. Supp. 3d at 726 (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Nichols v. Colvin*, No. 2:14-cv-50, 2015 WL 1185894, at *8 (E.D. Va. Mar. 13, 2015) (finding that the rehashing of arguments raised to the magistrate judge does not comply with the requirement to file specific objections).  Indeed, a district court "may reject perfunctory or rehashed objections to R&Rs that amount to a second opportunity to present the arguments already considered by the Magistrate Judge."  *Heffner v. Berryhill*, No. 2:16-cv-820, 2017 WL 3887155, at *3 (D.S.C. Sept. 6, 2017) (internal quotation marks omitted).  This objection states nothing more than Plaintiffs' "disagreement with [the] magistrate's suggested resolution," rather than

specifically identifying any factual or legal error in the Report. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Accordingly, Plaintiffs' first objection is overruled.

Similarly, Plaintiffs' second objection disagrees with the magistrate judge's conclusion that Plaintiffs failed to identify evidence of an injury to support their unjust enrichment claim. (ECF No. 66 at 5–10). However, Plaintiffs seem to ignore the core of the magistrate judge's analysis as to their unjust enrichment claim—"[t]hat the defendant's enrichment must come *at the expense of the plaintiff*[.]" (ECF No. 59 at 18 (emphasis added)). Instead, Plaintiffs again merely restates the same arguments already presented to the magistrate judge and the court declines to reconsider such arguments absent a specific identification of any legal or factual error in the Report. Moreover, even if the court were inclined to consider Plaintiffs' arguments, the court notes Plaintiffs still have not identified any evidence that the benefits the City received from the improvements to Hillcrest came at the expense of Plaintiffs such that Plaintiffs were actually damaged thereby. *See Gignilliat*, 385 S.C. at 467, 684 S.E.2d at 764. Therefore, Plaintiffs' second objection is also overruled.

## CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's Report (ECF No. 59), and **GRANTS in part** and **DENIES in part** the parties' opposing motions for summary judgment (ECF Nos. 36 and 37). The City's motion for summary judgment (ECF No. 36) is **GRANTED** as to Plaintiffs' claims for promissory estoppel and unjust enrichment but **DENIED** as to Plaintiffs' first four contract-based claims. Plaintiffs' motion for summary judgment (ECF No. 37) is **GRANTED** as to the City's breach of contract claim but **DENIED** as to its claim for unjust enrichment.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 16, 2022
Anderson, South Carolina