IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| John F. Floyd, Gordon Farms, Inc.,  ) | Case No. 7:20-cv-01305-JDA |
| )  | |
| Plaintiffs/Counter-Defendants,  ) | |
| )  | |
| v.  ) | **OPINION AND ORDER** |
| )  | |
| City of Spartanburg South Carolina,  ) | |
| )  | |
| Defendant/Counter-Claimant.  ) | |

This matter is before the Court on a motion for attorneys' fees and costs filed by Plaintiffs/Counter-Defendants John F. Floyd ("Mr. Floyd") and Gordon Farms Inc. ("Gordon Farms") (collectively, "Plaintiffs") and a motion to alter or amend judgment filed by Defendant/Counter-Claimant ("the City"). [Docs. 162; 177.]

Plaintiffs filed this action on April 6, 2020, asserting various claims arising out of agreements the parties made relating to the costs of redeveloping a shopping center. [Doc. 1.] On June 5, 2020, the City filed an Answer and Counterclaim and subsequently filed an Amended Answer and Counterclaim. [Docs. 6; 22.] Plaintiffs filed an Answer to the Amended Counterclaims on August 25, 2020. [Doc. 23.]

Plaintiffs' Complaint asserted claims against the City for (1) breach of contract—Intergovernmental Agreement (as a third-party beneficiary), (2) breach of contract, (3) breach of contract—implied covenant of good faith and fair dealing, (4) breach of contract accompanied by a fraudulent act, (5) unjust enrichment/quantum meruit, and (6) promissory estoppel. [Doc. 1 ¶¶ 53–90.] The City asserted counterclaims against Plaintiffs for (1) unjust enrichment and (2) breach of contract—implied covenant of good faith and fair dealing. [Doc. 22 ¶¶ 131–40.]

After the parties agreed to a bench trial [Doc. 124], the Court scheduled a bench trial on the then-remaining claims: Plaintiffs' claims against the City for breach of contract and breach of contract—implied covenant of good faith and fair dealing; and the City's counterclaim against Plaintiffs for unjust enrichment.[1] During the trial, Plaintiffs agreed that their two breach of contract claims merged into a single claim. [Doc. 154 at 228:21–229:17.] At the conclusion of the City's case, Plaintiffs moved for judgment on partial findings as to the City's remaining counterclaim for unjust enrichment, *see* Fed. R. Civ. P. 52(c), and the Court granted the motion [Docs. 156 at 168:11–180:25; 157 at 3:4–4:23]. Thus, the sole remaining claim in the case was Plaintiffs' claim against the City for breach of contract. [Doc. 1 ¶¶ 60–67.] Plaintiffs sought money damages and attorneys' fees. [*Id.* at 25.]

Following the conclusion of the bench trial, the Court ordered that judgment be entered in favor of Plaintiffs and against the City on Plaintiffs' breach of contract claim and that Gordon Farms be awarded $801,508.51 in actual damages (the "Opinion and Order"). [Doc. 158 at 39.] Judgment was entered on September 30, 2023. [Doc. 159.] On October 16, 2023, the Court ordered the City to pay prejudgment interest to Gordon Farms in the amount of $267,823.03 and an amended judgment was entered. [Docs. 169; 170.]

Plaintiffs filed their motion for attorneys' fees and costs on October 6, 2023. [Doc. 162.] On October 20 and 27, 2023, the City filed a response opposing the motion and Plaintiffs filed a reply and supplement. [Docs. 173; 175; 182.] The City filed its motion to

---

[1] The other claims and counterclaims had been dismissed following rulings on dispositive motions and the parties' stipulations of dismissal. [Docs. 71; 95.]

alter or amend judgment on October 30, 2023.[2]  [Doc. 177.]  On November 13 and 20, Plaintiffs filed a response opposing the motion and the City filed a reply and a supplement. [Docs. 177; 180.]  Both motions are now ripe for consideration.[3]

## DISCUSSION

**The City's Motion to Alter or Amend Judgment**

In its motion, the City requests relief under Rules 52(b) and 59 of the Federal Rules of Civil Procedure.  [Doc. 177; *see* Doc. 180 at 2.]  Rule 52(b) states that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly."  Fed. R. Civ. P. 52(b).  Rule 59(a)(2) states that "[a]fter a nonjury trial, the court may, on a motion for new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  Fed. R. Civ. P. 59(a)(2).  Rule 59(d) provides that "[n]o later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion.  Fed. R. Civ. P. 59(d).  Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).

---

[2]The Court notes that the City's motion exceeds the page limitation for initial briefs.  *See* Local Civ. Rule 7.05(B)(1) (D.S.C.).  Nonetheless, the Court has considered all arguments raised by the City.

[3]This case was before the undersigned as a magistrate judge for full disposition as a result of the parties' consent to jurisdiction by a magistrate judge, and the Honorable Timothy M. Cain's December 19, 2022, Order of Reference.  [Docs. 117; 183.]  In January 2024, the undersigned took commission as a United States District Judge, and as such, no longer serves the Court in a magistrate judge capacity.  Accordingly, the Court rescinded the referral to a United States Magistrate Judge.  [Doc. 183.]

Although neither Rule 52(b) nor Rule 59 "provide[s] a standard under which a district court may grant a motion to alter or amend a judgment, [the Fourth Circuit has] previously recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see Stogsdill v. Keck*, No. 3:12-cv-0007-JFA, 2015 WL 3396821, at *1 (D.S.C. May 29, 2015). However, "[i]t is not the intention or purpose of Rules 52(b) and 59(e) to permit parties to relitigate old matters, or give an unhappy litigant one additional chance to sway the judge." *Stogsdill*, 2015 WL 3396821, at *1 (internal quotation marks and citation omitted).

In this case, the City does not contend that there has been any intervening change in controlling law, nor does it identify any new evidence. Rather, the City points to what it contends are several factual and legal errors, the correction of which is necessary to prevent manifest injustice. [Docs. 177; 180.] The Court concludes that the City has not satisfied that standard with regard to any of the errors it alleges.

The Court specifically addresses only one of the City's arguments.[4] Namely, in the Opinion and Order, the Court found that the Extended Agreement[5] was supported by valuable consideration insofar as Plaintiffs "agreed to sell the Shopping Center for a lower

---

[4]Most of the arguments are attempts "'to relitigate old matters . . . or give [the City] one additional chance to sway the judge.'" *Stogsdill*, 2015 WL 3396821, at *1.

[5]The Court will not recite the Findings of Fact in this Order, but they can be found at Docket Entry Number 158 at 3–21.

price than they would have accepted without the extension of the rebate period."[6] [Doc. 158 at 35 ¶ 46.] The City contends, however, that the agreement by Plaintiffs to sell to Excel could not constitute adequate consideration supporting the Extended Agreement because the evidence in the record unequivocally shows that Plaintiffs had already contractually obligated themselves to sell to Excel for $32.8 million before the time that Mr. Floyd testified the parties entered into the Extended Agreement ("the City's Consideration Argument"). [Doc. 177 at 3–6.] The City specifically argues that the record establishes

---

[6]The City attempts to re-frame the Court's description of the valuable consideration to be whether Plaintiffs incurred a loss by selling the Shopping Center to Excel for less than it was worth. [Doc. 180 at 8–11.] It is correct that Mr. Floyd *felt* that he was losing money by selling the Shopping Center for more than he would have accepted without the Extended Agreement and that the Extended Agreement allowed him to recoup some of that lost money. [Doc. 158 at 35 ¶ 46.] However, the questions of what the Shopping Center was objectively worth and whether the sale to Excel was actually below market value are immaterial to the consideration issue. The critical issue is that, under the terms of the Extended Agreement, the City agreed it would take an action Plaintiffs wanted—extending the rebate period—if Plaintiffs agreed they would take an action the City wanted—selling to Excel. [Doc. 158 at 23–24 ¶ 14, 35 ¶ 46.] *See Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 304 (S.C. 1996) ("Clearly, there was a meeting of minds, and the exchange of promises qualified as consideration."); *Evatt v. Campbell*, 106 S.E.2d 447, 451 (S.C. 1959) ("Mutual promises . . . constitute good consideration."). Thus, the Court had no occasion to determine whether the sale to Excel was for a price below market value.

For this same reason, the Court does not agree with the City that the Court's consideration analysis is inconsistent with the undersigned's analysis in recommending the grant of summary judgment against Plaintiffs on their promissory estoppel cause of action. [Doc. 177 at 14–15.] Plaintiffs had argued that they were injured when, in reliance on the promises made by the City that comprised the Extended Agreement, they sold the Shopping Center for less than the $36 million price they originally had negotiated. [Doc. 55 at 5–7.] In recommending that summary judgment be granted against Plaintiffs with regard to their promissory estoppel claim, the undersigned concluded that Plaintiffs had not forecasted evidence that could support a reasonable inference that Plaintiffs suffered such an injury because Plaintiffs did not forecast evidence that Plaintiffs sold the Shopping Center for less than it was worth. [Doc. 59 at 17.] There is no tension between the respective analyses because, as just noted, the Court made no finding in the Opinion and Order that Plaintiffs sold the Shopping Center to Excel below market value.

5

that on September 13, 2004, Mr. Floyd and Excel executed a version of the Contribution Agreement that contractually obligated Plaintiffs to sell to Excel for $32.8 million, and that this obligation preceded the time when Mr. Floyd testified the parties agreed to the Extended Agreement.  [*Id.*]

The Court particularly noted in the Opinion and Order that "[t]he timing of Mr. Floyd's discussions with Ed Memmott regarding the sale of Excel, the renovations that would be required if the sale occurred, and the offer and acceptance of the Extended Agreement are not entirely clear from the record."  [Doc. 158 at 12 n.6.]  The Opinion and Order noted, however, that "the Court's analysis does not depend upon resolution of the exact chronology."  [*Id.*]  The City now takes issue with the latter point, claiming that the relative timing of the discussions between Mr. Floyd and Mr. Memmott is indeed critical because Mr. Floyd's agreement to go through with the sale to Excel could not constitute consideration supporting the Extended Agreement when Plaintiffs had already contractually obligated themselves to sell to Excel before the parties entered into the Extended Agreement.  [Doc. 177 at 7–10, 12–13.]  The Court disagrees with the City.

The flaw in the City's Consideration Argument is that no evidence in the record establishes that Plaintiffs entered into any binding agreement to sell the Shopping Center to Excel on September 13, 2004, or at any time prior to the formation of the Extended Agreement.  In arguing to the contrary, and specifically that Plaintiffs entered into a binding contract with Excel on September 13, 2004, to sell to Excel, the City points to Plaintiffs' Exhibit 61, Defendant's Exhibit 22, and Mr. Floyd's testimony about these exhibits at pages 190 through 198 of the transcript.  [Docs. 177 at 5–6; 180 at 6–8.]  None of this evidence establishes the creation of any binding contract between Plaintiffs and Excel, however.

Defendant's Exhibit 22 is the minutes of a special meeting of Gordon Farms' stockholder and directors on September 13, 2004, wherein they approved the proposed Contribution Agreement and authorized and directed Mr. Floyd as Gordon Farms' president to execute that agreement and to take other steps needed to finalize the deal. [Def. Ex. 22.] Although the City is correct that Defendant's Exhibit 22 established that Mr. Floyd was authorized and directed to execute the Contribution Agreement, no evidence shows when he actually did so.

Plaintiffs' Exhibit 61 is a portion of the Contribution Agreement, which was dated September 13, 2004. Gordon Farms produced this portion of that agreement during discovery. When asked at trial whether he signed Plaintiffs' Exhibit 61, Mr. Floyd answered that Exhibit 61 is "not the final version" of the Contribution Agreement.[7] [Doc. 154 at 194:24–195:11.] Mr. Floyd also testified that Exhibit 61 is only a small portion of the non-final version of the Contribution Agreement.[8] [*Id.* at 195:12–14.] Mr. Floyd never testified whether he actually executed a later version of the Contribution Agreement or any other agreement to sell the Shopping Center to Excel in September 2004 or at any time prior to the formation of the Extended Agreement. Nor did either party present any other evidence

---

[7]In support of its motion for judgment on partial findings, following the close of Plaintiffs' case, the City characterized the Contribution Agreement as "not the final offer," but only "the initial final offer." [Doc. 155 at 139:17–18.]

[8]The City questioned Mr. Floyd about why Plaintiffs did not produce the final version during discovery, and Mr. Floyd answered that Plaintiffs produced the documents that they had. [Doc. 154 at 195:12–21.]

7

that Plaintiffs entered into a binding contract to sell the Shopping Center at any time prior to the formation of the Extended Agreement.[9]

For that reason, the Court concludes that the City's Consideration Agreement does not justify granting the City's motion to reconsider. Because the Court also concludes that none of the City's other arguments warrant granting the City's motion, the City's motion is denied.

**Plaintiffs' Motion for Attorneys' Fees and Costs**

South Carolina Code Annotated § 15-77-300 provides, in relevant part:

> (A) In any civil action brought by the State, any political subdivision of the State or any party who is contesting state action, unless the prevailing party is the State or any political subdivision of the State, the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:
>
> > (1) the court finds that the agency acted without substantial justification in pressing its claim against the party; and
> >
> > (2) the court finds that there are no special circumstances that would make the award of attorney's fees unjust.

*Id.* Accordingly, "[t]here are three prerequisites that must be established prior to the recovery of attorney's fees and costs by a party contesting state action." *City of Charleston v. Masi*, 609 S.E.2d 301, 304 (S.C. 2005). "First, the contesting party must be 'the prevailing party;' second, the court must find that the agency acted without substantial justification in pressing its claim against the party; and third, the court must find that there are no special circumstances that would make an award of attorney's fees unjust." *Id.* In

---

[9] The Court notes that much of the City's argument depends on its assertions that the Contribution Agreement was executed on September 13, 2004 [Doc. 177 at 12–13, 18], but that fact was never established.

this context, a position has "substantial justification" if it is "justified to a degree that could satisfy a reasonable person." *Layman v. State*, 658 S.E.2d 320, 325 (S.C. 2008) (internal quotation marks omitted). "Therefore, in deciding whether a state agency acted with substantial justification, the relevant question is whether the agency's position in litigating the case had a reasonable basis in law and in fact. *Id.* at 326.

Plaintiffs contend that the City lacked substantial justification in pressing its counterclaims against Plaintiffs and in defending against Plaintiffs' claims by denying the existence of the Extended Agreement. [Docs. 162 at 4–9; 175 at 6–11.] The Court disagrees.[10] This case turned primarily on the factual question of whether a conversation occurred between Mr. Floyd and Mr. Memmott in which Mr. Memmott offered, on behalf of the City, to enter the Extended Agreement and Mr. Floyd accepted on behalf of Gordon Farms. As outlined in the Opinion and Order, there was evidence supporting both sides' positions regarding whether the parties actually entered into the Extended Agreement. Although the undersigned concluded that Plaintiffs demonstrated by a preponderance of the evidence that the parties did enter into the Extended Agreement, the evidence indicating that the Extended Agreement was not referenced in either the Contribution Agreement and the December 5, 2005, letter from Mr. Floyd's corporate attorney was particularly significant. [Doc. 158 at 33 ¶ 40.] The Court concludes that the City's position that the conversation did not take place was a reasonable one and it supported the City's

---

[10]Because the Court concludes that Plaintiffs have failed to show that the City acted without substantial justification, the Court declines to address the City's alternative arguments against Plaintiffs' entitlement to attorneys' fees, including its argument that the Court should not consider the City's actions in defending against Plaintiffs' claims in determining whether the City acted without substantial justification but should consider only the City's pursuit of its counterclaims [Doc. 173 at 3–5].

9

refusal to concede liability on Plaintiffs' breach of contract claim and its decision to prosecute its counterclaims asserting that Plaintiffs had been overpaid.

Plaintiffs argue that separate and apart from the City's challenge to the existence of the Extended Agreement, there was no factual or legal basis for the City's counterclaims for overpayment insofar as the total damages originally sought by the City under that claim did not reflect the existence of the K-Mart Agreement, which would have reduced any liability by Plaintiffs even in the absence of the Extended Agreement. [Doc. 162 at 8–9.] The Court does not agree that there was no factual or legal basis for the City's counterclaims. As Plaintiffs acknowledge [*id.* at 9], if the parties entered the Extended Agreement as Mr. Floyd testified, then Gordon Farms was overpaid, even if it was not by as much as the City originally requested in its counterclaims.

For these reasons, the Court cannot conclude that either the City's defending against Plaintiffs' claims or its assertion of its counterclaims were without substantial justification. Accordingly, Plaintiffs' motion for attorneys' fees and costs is denied.

## CONCLUSION

Wherefore, based upon the foregoing, Plaintiffs' motion for attorneys' fees and costs [Doc. 162] and the City's motion to alter or amend judgment [Doc. 177] are DENIED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Court Judge

February 26, 2024
Greenville, South Carolina